■ In the Matter of the Claim of IDA FRIEDMAN, Respondent-Appellant, v. FADA OF NEW JERSEY, INC. AND/OR FADA OF NEW YORK, INC., Respondent, and NEW JERSEY MANUFACTURERS CASUALTY INSURANCE COMPANY, Appellant-Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal from a decision of the Workmen's Compensation Board. The Workmen's Compensation Board has in effect reformed the contract of insurance, which in terms covered the employer's operations only in New Jersey, to include the employer's operations in New York. The main point on this appeal is whether the record fairly sustains an intention by the parties that the policy cover New York operations.

Fada of New Jersey, Inc., is a New Jersey corporation doing business solely in New Jersey. Appellant carrier issued a workmen's compensation policy to this corporation on May 10, 1952. Fada of New York, Inc., is a New York corporation engaged in distribution and sales solely in New York. Except for office employees who are in the same office in New Jersey as that used by Fada of New Jersey, Inc., all the business activities of Fada of New York, Inc., and its sales operations are conducted entirely in New York. On October 1, 1952 the carrier agreed to amend the policy issued to the New Jersey corporation to read as follows: "Fada of New Jersey, Inc. and/or Fada of New York, Inc." Claimant's husband, working solely in New York as a salesman for Fada of New York, Inc., was killed in an accident October 8, 1954. The policy covered "outside" salesman. The only salesmen which the New York corporation employed of any kind worked in New York. Although the carrier is a New Jersey insurance company it is also licensed in New York. An assistant vice-president testified it is a company which "operates only in New Jersey with the exception of being licensed since 1944 in New York State. Our auditors have to worry about only two states, New York and New Jersey. So unless they see a New York endorsement, they do not worry about salesmen in other states." The witness further testified "I know our auditor would start at Belleville [the New Jersey office of both corporations]. If they told him it was a New York office he would have gone over to the New York office and made the audit." It is clear from the record that the New York employer believed the amended policy covered the operations of its salesmen in New York. Their names, including that of the deceased employee Friedman, appeared on the books and premiums were paid for the classification of salesmen; and the New York salesmen were the only ones employed by this corporation. The assistant vice-president testified: "I also said before * * * that we did take payroll for Fada of New York. I never denied that. * * * And we accepted premiums * * * at the New Jersey rates." The attorney for the insured told the Referee that: "I want the record to indicate that so far as I am concerned, representing Fada of New York, having an endorsement on the policy and having no employees covered, except the employees in question who are working as salesmen in the New York territory, I would say to you if that practice was pulled on me by a lawyer, I would go to the Bar Association. I don't know where I'm going to go with the insurance company." The argument of the company is in effect that the policy expressly excluded operations outside of New Jersey and that although premiums were paid on the New York employees, the audit did not show where the salesmen worked and the rate in New York would have been different. But the indorsement in this unusual form would be a clear signal to any careful insurance company that the company then began insuring a New York corporation which differed in name and legal entity from the New Jersey corporation which had been insured, and concerning whose employees a simple question on the audit would have revealed that the salesmen employees for whom premiums were paid by a New York corporation all worked in New York. When it is borne in mind that the auditors "have to worry about only two states, New York and New Jersey", and if "they had told him" it "was a New York office" and presumably a New York employment for which the premium was being paid he would have looked further, it does not seem unreasonable to hold that the carrier be estopped from denying coverage for which the assured paid a premium and with considerable justification believed itself covered. On the issue of accident there seems a narrow question of fact. The board could find that decedent slipped and fell on a subway stairs and that, in the words of a witness "a nut and bolt slipped underneath his foot"; that he fell so violently his jacket was ripped "from the fall" and that he struck

his chest. It could further find there was medical association between the violent fall and the incidence of the coronary occlusion and myocardial infarction from which he died. Award unanimously affirmed, with costs to the Workmen's Compensation Board.